In re APEX OIL COMPANY, et al., Debtors.

CLARK OIL & REFINING CORPORATION, Plaintiff,

v.

CHICAP PIPE LINE COMPANY, et al., Defendants.

CLARK OIL & REFINING CORPORATION, Plaintiff,

v.

SOUTHCAP PIPELINE COMPANY, et al., Defendants.

Bankruptcy Nos. 87–03804–BSS, 87–03805–BSS.

Adv. Nos. 88–0084–BSS, 88–0130–BSS.

United States Bankruptcy Court, E.D. Missouri, E.D.

Sept. 8, 1988.

Joshua J. Mintz, Chicago, Ill., Jerome I. Kaskowitz, St. Louis, Mo., for defendants.

Arnold M. Quittner, Robert Jay Moore, Gendel, Raskoff, Shapiro & Quittner, Clayton, Mo., Arnold M. Quittner, Robert Jay Moore, Paul S. Aronzon, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., Dennis A. Ferrazzano, Barack, Ferrazzano and Kirschbaum, Chicago, Ill., for debtors.

Gregory D. Willard, Laurence M. Frazen, Bryan, Cave, McPheeters and McRoberts, St. Louis, Mo., Stephen J. Blauner, David C.L. Frauman, Milbank, Tweed, Hadley and McCloy, New York City, for Lender Group.

Lloyd A. Palans, Gallop, Johnson and Neuman, St. Louis, Mo., examiner.

Steven N. Cousins, Armstrong, Teasdale, Kramer, Vaughan & Schlafly, St. Louis, Mo., for Unsecured Creditors Committee.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER,
Bankruptcy Judge.

Clark Oil & Refining Corporation a debtor in these procedurally consolidated cases (hereinafter "Clark") seeks orders in these two adversary proceedings enjoining holders of promissory notes issued by Chicap Pipe Line Company (hereinafter "Chicap") and Southcap Pipe Line Company (hereinafter "Southcap") and enjoining Chicap and Southcap from paying the noteholders. The Court previously entered orders temporarily restraining the noteholders, Chicap and Southcap and by consent of all parties, entered preliminary injunctions enjoining the acceleration and payment of the notes. Pursuant to an order consolidating the two adversary proceedings, a joint trial regarding the issuance of a permanent injunction was held July 26, 1988.

FACTS

On December 24, 1987, Clark filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On April 8, 1988, Clark commenced adversary proceeding No. 88–0084 seeking an order restraining and enjoining certain defendants (hereinafter the "Chicap Defendants")[1] from accelerating 6¾% promissory notes issued by Chicap and restraining and enjoining Chicap from paying the Chicap Defendants any accelerated sums demanded under the notes. On May 19, 1988, Clark commenced adversary proceeding No. 88–0130 seeking identical relief against certain noteholders (hereinafter the "Southcap Defendants")[2] with respect to 6⅜% promissory notes issued by Southcap.

Chicap and Southcap are in the business of transporting oil as common carriers through their respective pipelines. The construction of the pipelines was financed in part by the issuance of promissory notes. Chicap and Southcap each executed and delivered to their respective noteholders, notes in the original principal amount of $27,000,000.00. The Chicap notes bear interest at the rate of 6¾% per annum while the Southcap notes bear interest at the rate of 6⅜% per annum. The outstanding principal balance of the Chicap notes as of July 1, 1988 was $8,760,000.00 while the

---

**1.** The Chicap Defendants are: Maccabbes Mutual Life Insurance Company, Maccabbes Life and Annuity Company, Virginia Supplemental Retirement System, Public School Teachers Pension and Retirement Fund of Chicago and Transamerica Life Insurance and Annuity Company.

**2.** The Southcap Defendants are: Transamerica Life Insurance and Annuity Company, IDS Life Insurance Company, Sher & Co., Virginia Supplemental Retirement System, and Kane & Co.

outstanding principal balance of the South-cap notes on that date was $6,169,000.00. All the Chicap and Southcap Defendants are holders of such notes.

The three shareholders of Chicap and their percentage ownership are:

| Owner | Percentage Ownership |
|---|---|
| Union Oil Company of California | 48.07% |
| Amoco Pipe Line Company | 29.17% |
| Clark Oil & Refining Corporation | 22.76% |

The two shareholders of Southcap and their percentage ownership are:

| Owner | Percentage Ownership |
|---|---|
| Union Oil Company of California | 63.951% |
| Clark Oil & Refining Corporation | 36.049% |

Both the Chicap Note Agreements and the Southcap Note Agreements provide that the filing of a petition in bankruptcy by a shareholder is an event of default. Upon the occurrence of an event of default, the holders of more than 25% of the outstanding Chicap notes and Southcap notes have the right to accelerate all sums due under their notes so that such sums are immediately due and payable. Both the Chicap Defendants and Southcap Defendants represent more than 25% of the note-holders of each pipeline company and each group of such Defendants has notified Chicap and Southcap of their election to accelerate.

On May 15, 1968, the shareholders of Chicap entered into a Throughput Agreement. The Chicap Throughput Agreement was amended on February 28, 1975 and June 6, 1977. On June 1, 1967, the shareholders of Southcap entered into a Throughput Agreement. The Southcap Throughput Agreement was amended on June 15, 1973. Under both the Chicap and Southcap Throughput Agreements, the respective shareholders of Chicap and South-cap are obligated to periodically ship specified percentages of crude oil to enable Chicap and Southcap to meet their total expenses, including those to the holders of the Chicap Notes and Southcap Notes. According to the Throughput Agreements, should total revenues derived by Chicap or Southcap be insufficient to enable either to meet all of its expenses, the shareholders are required to make cash advances to enable Chicap or Southcap to meet its obligations. According to the Throughput Agreements, any such cash advances are treated as prepayment for future shipments of crude oil by the shareholders.

To date, Chicap and Southcap have made all payments of principal and interest due under their Notes. Prior to acceleration, both Chicap and Southcap had revenues from the shipment of crude oil sufficient to meet all of their expenses and neither Chicap nor Southcap has ever called upon shareholders to make cash advances under the Throughput Agreements. From 1974 through 1987, Chicap has had sufficient retained earnings to pay annual dividends to its shareholders.[3] From 1971 through 1987, Southcap has had sufficient retained earnings to pay annual dividends to its shareholders.[4]

The Chicap Defendants and Southcap Defendants argue that the cash dividends received by Clark represent a deminimis amount of Clark's total revenue. The parties have stipulated that while Clark had an operating loss in 1986 of $150,592,000.00 and in 1987 its loss was $6,297,000.00 the following represent Clark's gross revenue and the percentage of dividends received from Chicap and Southcap:

| Year | Clark's Gross Revenue | Percentage of Pipe Line Revenue as Total Revenue | |
|---|---|---|---|
| 1986 | $1,672,857,000.00 | Chicap | .015% |
| | | Southcap | .009% |
| 1987 | 1,432,259,000.00 | Chicap | .027% |
| | | Southcap | .032% |

---

**3.** Chicap declared and paid dividends of $1,120,000.00 in 1986 (of which Clark's share was $254,912.00) and $1,687,000.00 in 1987 (Clark's share was $382,368.00).

**4.** Southcap paid cash dividends of $1,508,000.00 in 1986 (of which Clark's share was $543,618.92) and $377,000.00 in 1987 (of which Clark's share was $135,904.73).

The financial statements of Chicap and Southcap reflect the following total revenues and net earnings:

|  | Total Revenue | Net Earnings |
|---|---|---|
| Chicap |  |  |
| 1986 | $ 7,422,717.00 | $1,668,776.00 |
| 1987 | $ 6,829,901.00 | $1,483,380.00 |
| Southcap |  |  |
| 1986 | $12,862,228.00 | $1,753,534.00 |
| 1987 | $10,719,445.00 | $1,205,744.00 |

According to the Board of Directors of Chicap and Southcap, the least expensive method of refinancing the Notes would be pursuant to commitments received from Continental Illinois National Bank and Trust Company. Under the commitment, Chicap and Southcap would be charged a floating interest rate based on the variable London Inter Bank Offered Rate plus 3/4% and would be required to make some semi-annual principal payments of $500,000.00 plus interest, with the balance due and payable in June, 1993.[5] The present Chicap Notes mature December, 1998.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri as well as this Court's Order of July 25, 1988 in these Adversary Proceedings.

## DISCUSSION

Clark, the Creditors' Committee, Chicap and Southcap each seek to have the Court impose a stay upon the Chicap Defendants and the Southcap Defendants who have declared a default and seek acceleration of their Notes. Clark argues that § 105 of the Bankruptcy Code empowers the Court to enjoin the Noteholders from accelerating amounts due under their Notes and to en-

join Chicap and Southcap from paying the accelerated principal in order to avoid irreparable harm to the estate. In support of its position, Clark cites *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986), wherein the Bankruptcy Court enjoined a suit between a creditor and third-parties on the ground that irreparable harm would be caused to the estate absent an injunction, and *Otero Mills, Inc. v. Security Bank & Trust*, 25 B.R. 1018, 120 (D.N.M.1982), wherein the District Court affirmed the decision of the Bankruptcy Court to enjoin a third-party from prosecuting a suit against the president and shareholder of the corporate debtor. Moreover, Clark cites numerous cases to support the proposition that an injunction under § 105 is proper to protect the integrity of a bankrupt's estate and to preserve the debtor's chances of successfully reorganizing. *In re Johns–Manville Corp.*, 40 B.R. 219, 226 (D.Ct.S.D.N.Y.1984).

Clark further argues that its financial interest in Chicap and Southcap need this Court's protection and that such protection will assist the Debtor in its reorganization. Clark then argues that financial injury is sufficient to constitute irreparable harm within the context of § 105. The Eighth Circuit Court of Appeals in *N.L.R.B. v. Superior Forwarding, Inc.*, 762 F.2d 695, 698 (8th Cir.1985) stated that "courts which have considered the question have determined that § 105 grants a bankruptcy court the discretion and authority to enjoin federal regulatory proceedings when those proceedings 'threaten' the assets of the debtor's estate." *See also Bostwick v. United States*, 521 F.2d 741, 744 (8th Cir. 1975).

Unfortunately, this Court does not believe that a remedy fashioned under § 105 is appropriate under the circumstances of

5. Assuming a constant interest rate of only 8.9375% for the period June 1988–June 1993 and that the remaining indebtedness in June, 1993 is refinanced at an interest rate of 10% per annum, the total increased costs to Chicap under the Continental Illinois Bank proposal would cost Chicap $1,115,106.00 more than if its Notes are not accelerated. Under similar assumptions, Southcap would pay and incur additional expense of $565,547.00.

this case. Specifically, the Court does not believe that the standard established in *In re Baldwin–United Corp.*, 57 B.R. 759 (Bankr.S.D.Ohio 1985) has been met. The *Baldwin* Court held that § 105 remedies should be fashioned when the "action sought to be enjoined would so consume the time, energy and resources of the debtor that it would substantially hinder the debtor's reorganization effort". A similar view was stated by the Bankruptcy Court in *In re Arrow Huss, Inc.*, 51 B.R. 853, 859 (1985) when it held: "The power to prevent creditors from proceeding against non-debtors must only be used in extraordinary cases, and not simply to 'assist' the debtor in reorganizing or to relieve general 'pressure' on the debtor." Citing *In re A.J. Mackay Company*, 50 B.R. 756 (Bankr.D. Utah 1985). While Chicap and Southcap may be faced with refinancing of the accelerated debt, such refinancing does not, in the Court's opinion, cause extraordinary or irreparable harm to Clark, a shareholder in Chicap and Southcap. There is no evidence that such refinancing will substantially hinder the Debtors' reorganization effort.

The Creditors' Committee argues next that § 362(a)(3) operates as a stay to obtain possession of or exercise control over property of the estate. In numerous cases cited by the Creditors' Committee including *A.H. Robins, supra,* the Committee argues that the stay of § 362 extends to actions directly against a debtor as well as to actions where the debtor is a real party in interest or which otherwise may bind the debtor's estate such as the liability for indemnity under the Throughput Agreements. In a case involving third-party liability Chief District Judge Nangle of this District held that adverse effect upon the debtor alone is not sufficient justification for the exercise of jurisdiction over the

property of non-debtors. *In re Aboussie Bros. Construction Co.*, 8 B.R. 302 (E.D. Mo.1981). Accordingly, this Court declines to extend the stay of § 362(a)(3) to the non-debtor Chicap and Southcap.

Clark's greatest reliance is based upon its argument that § 365(e)(1)(B) restricts termination or modification of rights under executory contracts because of a contractual provision that is conditioned upon the commencement of a title 11 case.[6] Both the Chicap and Southcap Note Agreements contain identical provisions at paragraph 21(f) which state:

21. Events of Defaults; acceleration, etc. if one or more of the following events ("Events of Default") shall occur:

(f) if the Company or any of the Oil Companies shall make an assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts as they become due, or shall file a petition in bankruptcy, or shall be adjudicated a bankrupt or insolvent, or shall file a petition seeking any reorganization, arrangement, composition, readjustment or similar relief under any present or future statute, law or regulation, or shall file an answer admitting or not contesting the material allegations of a petition filed against it in any such proceeding, or shall seek or consent to or acquiesce in the appointment of a trustee, receiver or liquidator for itself or any substantial part of its property;

It is this provision which the Creditors' Committee and Clark contend gives rise to the Defendants claim to acceleration and which act as a modification or termination of the Note Agreement. Such *ipso facto* termination or modification triggers the restriction of § 365(e)(1)(B).

6. 11 U.S.C. § 365(e)(1)(B) states in part as follows:

(e)(1) notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under

such contract or lease may not be terminated or modified at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on ... ·

(B) the commencement of a case under this title.

In support of their contention, the Creditors' Committee and Debtor cite *In re Texaco, Inc.*, 73 B.R. 960 (Bankr.S.D.N.Y.1987) wherein the Indenture Trustee sought to serve notice of acceleration based on a note provision similar to the provision in the case *sub judice*. The *Texaco* Court found in a similar *ipso facto* clause the Indenture Agreement to be an executory contract of the debtor and held it to be unenforceable under § 365(e)(1)(B). The Court stayed the Indentured Trustee, the Chase Manhattan Bank from taking actions to accelerate the Notes.

Before this Court analyzes whether the Note Agreements of Chicap and Southcap are executory contracts, bringing into effect the provisions of § 365, the Court must first determine whether the Note Agreements are executory contracts "of the Debtor". Both Note Agreements are between the pipeline companies and the Noteholders. Accordingly, the Note Agreements are not executory contracts of Clark. The Debtor and Creditors' Committee's reliance upon *In re Texaco* is misplaced. The Court in *Texaco* held that:

"Manifestly the Indenture dated June 27, 1983, contemplates continued performances on the part of Texaco Capital, Inc. and Chase, as the Indenture Trustee." *Texaco* at p. 964. Texaco Capital, Inc. was one of the Debtors in the *Texaco* case. Significantly, neither Chicap nor Southcap Pipeline Company who are signators to the Note Agreement are Debtors herein. Similarly, no signator to the Throughput Agreements are Debtors herein.

This Court concludes based upon the foregoing that the Plaintiff is not entitled to injunctive relief against the Defendants under its theories of § 105, § 362 or § 365.

Accordingly, it is

ORDERED that judgment be entered in favor of the Chicap Defendants and Southcap Defendants and against the Plaintiff and,

IT IS FURTHER ORDERED that the consensual preliminary injunctions dated April 26, 1988 and June 9, 1988 enjoining the acceleration and payments of the promissory notes of Chicap Pipeline Company and Southcap Pipeline Company are hereby dissolved.