In re Richard T. CALVERT, Debtor.

**PARK WEST REAL ESTATE CORPORATION, Moving Party,**

v.

**Richard T. CALVERT, U.S. Trustee, Richard Kipperman, Gilbert Klecan and Deane Haskins, Respondents.**

Bankruptcy No. 90–00927–B11.
R.S. No. 03121.

United States Bankruptcy Court,
S.D. California.

Dec. 12, 1991.

W. Lee, McElravy, III, San Diego, Cal., for debtor.

Mikel R. Bistrow, San Diego, Cal., for Park West Real Estate.

Michael D. Breslauer, San Diego, Cal., for Klecan.

Robert D. Middendorf, San Diego, Cal., for Official Creditors Committee.

Radmila A. Fulton, San Diego, Cal., for Calvert.

Geoffrey E. Marr, San Diego, Cal., for Trustee.

## ORDER

PETER W. BOWIE, Bankruptcy Judge.

Park West Real Estate Corporation has filed a motion for relief from the automatic stay, seeking a nunc pro tunc order which would validate actions taken by the corporation's board of directors. The Chapter 11 trustee, the debtor, and the Official Creditors Committee oppose the relief requested.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

Debtor Richard Calvert was a fifty percent shareholder in Park West Real Estate Corporation, and the other fifty percent was owned by Gilbert Klecan. Because of disagreements between the two as directors of the corporation, they resorted to state court for appointment of a provisional director, which was accomplished. The foregoing occurred approximately four years before Mr. Calvert filed his petition in bankruptcy on February 6, 1990. (The trustee, Mr. Kipperman, was appointed on or about October 19, 1990).

On or about July 3, 1991 Park West gave notice of a special meeting of the board to Mr. Calvert. The meeting was held on July 8, 1991, but Mr. Calvert did not attend or otherwise participate. At the meeting, Mr. Klecan and the provisional director authorized the corporation to issue additional shares of stock to Mr. Klecan in satisfaction of debt owed by the corporation to Mr. Klecan. The net effect of the equity-for-debt exchange was to increase Mr. Klecan's percent of ownership of Park West Corporation, and correspondingly reduce the percent of ownership represented by the number of shares held now by the Chapter 11 trustee.

The next step for Park West was to file a motion in state court for removal of the provisional director on the ground that a provisional director was no longer necessary since Klecan was now the majority shareholder and the basis of the stalemate no longer existed. Section 308 of the California Corporations Code provides in relevant part:

(a) If a corporation has an even number of directors who are equally divided and cannot agree as to the management of its affairs, so that its business can no longer be conducted to advantage or so that there is danger that its property and business will be impaired or lost, the superior court of the proper county may, notwithstanding any provisions of the articles or bylaws and whether or not an action is pending for an involuntary winding up or dissolution of the corporation, appoint a provisional director pursuant to this section. Action for such appointment may be brought by any director or by the holders of not less than 33–⅓ percent of the voting power.

.     .     .     .     .

(c) A provisional director shall be an impartial person, who is neither a shareholder nor a creditor of the corporation, nor related by consanguinity or affinity within the third degree according to the common law to any of the other directors of the corporation or to any judge of the court by which such provisional director is appointed. A provisional director shall have all the rights and powers of a director until the deadlock in the board or among shareholders is broken or until such provisional director is removed by order of the court or by approval of the outstanding shares (Section 156).

. . . . .

The instant dispute was brought to the fore by a letter from trustee's counsel to Park West stating the trustee's view that the state court proceeding to terminate the appointment of the provisional director violated the automatic stay. In addition, the trustee asserted that the issuance of the additional shares to Klecan to satisfy debt might also violate the stay. Park West believes the stay is not implicated by either action, but out "of an abundance of caution" seeks relief from the stay if relief is required.

■ Park West Corporation acknowledges that the trustee succeeded to the debtor's status as a *shareholder* of the corporation. There has been no suggestion, however, that the trustee also took Calvert's place as a director of the corporation. Thus, the basic issue is whether the intangible rights and obligations of stock ownership, which are property of a debtor's estate, are sufficiently broad to preclude a non-debtor corporation from taking actions which may have an effect on the value of that stock. Park West analogizes to a debtor who owns a few shares of IBM stock and points out the difficulties of sustaining the argument that IBM had to obtain relief from stay in every case in which one or more shares was property of debtors' estates before the corporation could take any action.

The trustee, debtor, and OCC, on the other hand, focus on the instant situation where the debtor was an equal shareholder. They point to the devaluation of the shares which may result by virtue of having been relegated to minority status. Certainly, in the sale of many stocks a premium is paid for a controlling or equal interest, as distinct from minority interest, particularly because of the associated power to control or help shape the future course of business affairs. The trustee argues, in effect, that that intangible power derived from fifty percent ownership is itself property of the debtor's estate subject to the automatic stay.

It is certainly a truism that the definition of property of the estate under 11 U.S.C. § 541 is very broad, and the trustee's argument has an appeal precisely because of what has occurred in the instant case. The only authority cited by either side is the decision in *In re Apex Oil Co.*, 91 B.R. 865 (Bankr.E.D.Mo.1988). In that case, Clark Oil and Refining, as a debtor, filed adversary proceedings to enjoin two non-debtor companies in which Clark owned 22% and 36%, respectively, from accelerating certain promissory notes. The adversary proceedings were brought pursuant to 11 U.S.C. § 105, and one argument advanced was that the automatic stay operated to bar the act sought to be enjoined. The Bankruptcy Court rejected the argument to extend the stay to the activities of those non-debtor corporations, and also rejected relief under § 105.

The Court's research has uncovered several other cases with relevant discussion. *In re Peoples Bankshares, Ltd.*, 68 B.R. 536 (Bankr.N.D. Iowa 1986) involved a debtor in Chapter 11 which was a bank holding company. Its principal assets were five state-chartered subsidiary banks. The debtor commenced an adversary proceeding against the state Superintendent of Banking for declaratory relief that the automatic stay barred acts by the Superintendent which could affect the value of the debtor's stock in the five banks, or for injunctive relief under § 105. The court's analysis of the § 362 issue can be extracted as follows:

The Debtor in the case at bar is Peoples Bankshares, Ltd., and § 362(a)(1) op-

erates to stay all actions against this corporation. The five state banks are separate, distinct entities which are not debtors in bankruptcy court. The Debtor concedes that the five state banks are not sham corporations nor alter egos of the Debtor, but each has its own valid corporate identity. Thus the automatic stay of actions against a debtor pursuant to § 362(a)(2) does not apply to the five state banks which are controlled by Peoples Bankshares.

The main thrust of Peoples' complaint concerning the automatic stay provisions of § 362 relates to § 362(a)(2) and (a)(3). Those sections act as a stay against, *inter alia*, actions against the property of debtor's bankruptcy estate. Peoples argues the potential regulatory action to be taken by the Superintendent of Banking is directed at property of the bankruptcy estate and is thus stayed by §§ 362(a)(2) and (a)(3).

Section 541 provides the definition of property of the estate, actions against which are stayed by § 362(a). There is no dispute that the Debtor owns all or nearly all of the outstanding shares of stock in the five state banks. But such ownership does not make the banks themselves property of the bankruptcy estate. Although a debtor owns 100 percent of the stock of a corporation, the property interest of the debtor's bankruptcy estate extends only to the intangible personal property rights represented by the stock certificates; the technical, legal distinctions between corporations will be respected and applied with reference to the automatic stays of actions against property of the estate.

68 B.R. at 539. The court thus concluded that none of the provisions of § 362(a) operated to bar action of the Superintendent of Banking with respect to the five subsidiary banks, even though that action might have an adverse effect on the value of the debtor's shares in each of the banks.

*In Re Venture Properties, Inc.,* 37 B.R. 175 (Bankr.D.N.H.1984) involved a corporate debtor which filed Chapter 11. That corporate debtor filed an adversary to enjoin third parties from taking certain action regarding the sale of property. In fact, the rights to purchase the property had been assigned not to the debtor, but to a partnership of which the debtor was the general partner. The partnership was not itself a debtor in bankruptcy. Upon establishing that it was the partnership which held the rights, not the debtor, the court stated:

> It is clear that § 362 by itself has no application to the situation since it deals only with "property of the estate" as defined in § 541 of the Code. The buyer's rights here were owned by Milford, not Venture, at the time of filing. Venture's status as general partner in the Milford limited partnership gave it an obvious reason to be concerned as to the disposition of any assets of Milford but this "interest" does not amount to a "legal or equitable interest in property" within the meaning of § 541 in the judgment of the court.

37 B.R. at 176. The court later offered in rejecting a request for an injunction under § 105:

> Moreover, there is no essential difference in Venture's position in this case and that of any debtor who might contend that "property of the estate" was involved because the debtor owned an interest in a non-debtor entity which itself had a legal or equitable interest in some asset. This rationale could be used to justify injunctive relief against disposition of such assets merely because the debtor owned corporate stock, for example, in a corporation holding the assets.

37 B.R. at 177.

*In re Loughnane,* 28 B.R. 940 (Bankr. D.Colo.1983) involved a bankruptcy petition by an individual debtor under Chapter 13. The debtor owned 100% of the shares of a corporation. The corporation fell in arrears on its obligations to the IRS and the IRS levied on the corporation's bank account. The debtor brought an action to hold the IRS in contempt for violating the automatic stay. The court stated:

> [T]he issue is whether the IRS commenced proceedings against property of

James Loughnane's estate as property of the estate is defined in 11 U.S.C. § 541.

The question of what constitutes property of the estate under § 541 is a federal question, although bankruptcy courts will look to state law for assistance in answering the question. (Citations omitted.)

In this case, James Loughnane filed for bankruptcy as an individual and not in any corporate capacity. ... Although James Loughnane owns 100% of the stock of Jim Dins Foods, Inc., the property interest of James Loughnane bankruptcy estate extends only to the intangible personal property rights represented by the stock certificates. Here, the IRS seeks to collect back taxes owed by Jim Dins Foods, Inc., and in no way does the IRS interfere with the personal property of the debtor as an individual. ... While the ownership interest of the debtor in stock of Jim Dins Foods, Inc. is property of the estate, the corporate entity is not property of the estate.

28 B.R. at 942.

This Court agrees with the rationale of the foregoing cases. Park West Real Estate Corporation is a separate legal entity and there has been no suggestion that it is a sham corporation or that it is the alter ego of the debtor. Indeed, the few facts before the Court suggest the contrary. While the trustee's argument has appeal in circumstances like the present, this Court has not found any satisfactory way to draw a meaningful line separating the circumstances and incidences of stock ownership which would implicate the automatic stay from those that would not. In this Court's view, the better rule is that Park West is a separate legal entity entitled to act through its duly constituted board and officers, even though those actions may have an effect on the value of shares of stock held by the estates of debtors. Accordingly, this Court concludes that the automatic stay does not apply to actions of the board of the corporation in determining to exchange debt for equity with another shareholder, thereby giving that shareholder a majority interest in the corporation.

■ Park West has also requested relief from stay to proceed with its state court application to remove the provisional director. Park West acknowledges that debtor is "technically named as a defendant in the proceeding," but argues that debtor is only a nominal defendant and not essential to the action. The debtor has not responded to this portion of the motion.

Subsection (a)(1) of section 362, Title 11, United States Code, provides that the filing of a bankruptcy petition:

[O]perates as a stay, applicable to all entities, of—(1) the commencement of continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title.

...

In support of its assertion that commencement or continuation of an action in which the debtor is a nominal defendant is not violative of the automatic stay, Park West cites two cases. The first, *Price & Pierce Intern. v. Spicers Intern. Paper*, 50 B.R. 25 (S.D.N.Y.1985), is a terse district court decision in an interpleader action. The funds were deposited with the court and it remained for the court to determine which of two competing claimants was entitled to the funds. Then one of the claimants filed bankruptcy and asserted that the interpleader proceedings were stayed. The district court recognized:

Section 362 of the Bankruptcy Code is designed "to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, secured and unsecured ... thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts."

50 B.R. at 26. The district court then proceeded to ignore at least part of the underlying rationale supporting the quoted policy. Instead, the court rationalized:

The reach of the automatic stay is limited by its purposes.

The automatic stay provision normally applies to actions in which the bankrupt is a defendant. Although SIPSI is a named defendant, its status in that regard is nominal. In making claim to the Fund, SIPSI takes the role of plaintiff in this action. Thus, this is not an action to obtain possession of property held by SIPSI, as required for the invocation of § 362; rather, it is an action to determine whether the Fund, or some part thereof, rightfully belongs to Papeteries or SIPSI.

*Id.* For multiple reasons, this Court is persuaded that the foregoing case was wrongly decided. First, it appears that the district court arbitrarily casts the debtor as really a plaintiff, when in fact the action was commenced against two parties as defendants, both of them claiming a right or interest in the funds. Second, the court made no analysis under § 541, instead assuming that until it decided which party was entitled to the funds the estate had no interest in any claim to the funds. Third, the court ignored one of the elemental concerns represented by § 362(a)(1), that is, that because the debtor was insolvent it was unable to adequately defend its claim to the funds in a separate forum and that a valuable asset of the estate might thereby be lost.

The second case cited by Park West, *Walters v. First Tennessee Bank, N.A. Memphis,* 855 F.2d 267 (6th Cir.1988), contains only dicta as to this issue, relying on the *Price & Pierce* decision discussed above. Moreover, the case was factually very different. Walters was a 50% shareholder in Ten Tex corporation. He arranged loans for himself and for the corporation with the bank. He subsequently filed a shareholder's derivative action against the bank claiming that the terms of the loan to the corporation were usurious. The corporation had in the meantime filed bankruptcy. The trial court dismissed the derivative usury claim because of the statute of limitations. On appeal, Walters argued that the statute of limitations was tolled by the corporation's bankruptcy because the derivative action theoretically could not have been commenced during the

corporation's bankruptcy since it had been named a party defendant in the derivative action. The court explained:

Walters maintains that Ten Tex's filing of a Chapter 11 petition on September 30, 1980, triggered the automatic stay provision of 11 U.S.C. § 362 before the statute of limitations had run. He theorizes that since Ten Tex, the debtor, was a named party defendant in the derivative action, the automatic stay provision would have prohibited initiation of the derivative action until disposition of the bankruptcy case, which had not occurred as of November 1982. We reject Walters' contention. First, Walters did not raise this point before the district court. It is well established that where a plaintiff fails to assert in district court that the statute of limitations has been tolled, he cannot raise it for the first time on appeal. (Citation omitted.) Even if we were to reach the merits of the issue, we would determine that this is not "an action against the debtor" stayed by 11 U.S.C. § 362. As noted by the Bank, Ten Tex is merely a nominal defendant in the derivative action; the Bank is the party charged with usury. This is sufficient to take the derivative action out of the scope of the automatic stay provision. *See, e.g., Price & Pierce Int'l, Inc. v. Spicers Int'l Paper Sales, Inc.,*

. . . .

855 F.2d at 270–271.

Neither case cited by Park West is persuasive to this Court for the proposition asserted. However, this Court need not decide whether a proceeding brought in part against a debtor can avoid the automatic stay of § 362(a)(1) if the debtor is only a "nominal" defendant. In the instant case, Park West has failed to persuade this Court that the debtor is only a nominal defendant. The few facts set out in the moving papers indicate that Klecan and the debtor were each fifty percent shareholders in Park West. Each was also a director of Park West. Because of their inability to agree, as directors, on matters affecting the corporation, appointment of a provisional director was obtained. So far as the

record indicates, debtor is still a director of Park West. The debtor presumably has an interest in being able to persuade a neutral third director of the appropriateness of a particular course for the corporation. The Court notes that under § 308(a) of the California Corporations Code the debtor or trustee would be eligible to seek appointment of a provisional director. In pertinent part, the subsection provides: "Action for such appointment ·may be brought by any director or by the holders of not less than 33–⅓ percent of the voting power." In this Court's view, Park West has failed to establish its threshold premise, that debtor is only a "nominal" defendant in the state court proceeding. Based on the limited record developed in the motion, this Court concludes that the automatic stay applies to the state court proceeding in which debtor is a named defendant.

■ As already noted, Park West has requested relief styled as nunc pro tunc to authorize the state court proceedings which have already occurred post-petition and to allow their continuation. Rule 4001, Federal Rules of Bankruptcy Procedure, was amended effective August 1, 1991 to require service of relief from stay motions on either the twenty largest unsecured creditors of an estate or on the duly constituted creditors' committee. Rule 4001(d) as amended, provides in relevant part:

> (1) *Motion.* A motion for relief from an automatic stay provided by the Code ... shall be made in accordance with Rule 9014 and shall be served on any committee elected pursuant to § 705 or appointed pursuant to § 1102 of the Code or its authorized agent, or, if the case is a ... Chapter 11 reorganization case and no committee of unsecured creditors has been appointed pursuant to § 1102, on the creditors included on the list filed pursuant to Rule 1007(d), and on such other entities a the court may direct.

Review of the certificate of service filed by Park West indicates no such service was made by Park West. The motion is therefore procedurally defective as one for relief

from the automatic stay, and the motion is, accordingly, denied without prejudice.

IT IS SO ORDERED.